[Nos. 32499-7-II; 33798-3-II.   Division Two.   August 14, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. JON ROYAL FLEMING, *Appellant*.

*In the Matter of the Personal Restraint of* JON ROYAL FLEMING.

*Jon Royal Fleming*, pro se.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant/petitioner.

*Gary P. Burleson, Prosecuting Attorney*, and *Monty D. Cobb, Deputy*, for respondent.

¶1 PENOYAR, J. — Jon Royal Fleming appeals his conviction for witness tampering. He raises numerous claims of error on appeal, including a claim that he was denied a unanimous jury verdict on precisely which of the alternate means of witness tampering he committed. He also claims that his offender score was improper because the State failed to present a presentence report or to otherwise prove his prior convictions. We reject all of his arguments and affirm the verdict.

## FACTS

¶2 Fleming was incarcerated at the Washington Correction Center when he learned that Clarence Ward, a man he had been accused of assaulting, was in jail as well.[1] In a March 20, 2002, phone conversation with his grandmother, Zenaida Evans, Fleming instructed her to bail Ward out of

---

[1] This assault charge was later dropped.

jail and ask him to disappear until after trial. The Department of Corrections (DOC) recorded this conversation on tape (DOC generally records all inmate phone conversations).

¶3 Evans contacted Ward's family and offered them money to post bail for Ward so he could disappear and not testify against Fleming. Ward's family refused. Meanwhile, DOC investigator George Gilbert discovered the phone conversation between Fleming and Evans and gave a copy of the tape to Detective Jack Gardner with the Mason County Sheriff's Office.

¶4 Approximately six months after the phone conversation, DOC destroyed the original recording. DOC also destroyed tape recordings of Fleming's other phone conversations with Evans, including recordings of conversations that occurred soon after the incriminating conversation. Gilbert later testified that he listened to the subsequent phone calls but that there was no further mention of witness tampering.

¶5 The jury convicted Fleming as charged. Fleming now appeals. We consolidated this appeal with his personal restraint petition.

## ANALYSIS

### I. Alternate Means of Witness Tampering

¶6 Fleming argues that he was denied his constitutional right to a unanimous verdict, which may include the right to jury unanimity as to the means by which he committed the crime. He asserts that witness tampering can be committed by several alternative means: (1) inducing a witness to testify falsely, (2) inducing a witness to unlawfully withhold testimony, or (3) inducing a witness to absent himself from the proceedings. RCW 9A.72.120. He contends that we should reverse his conviction because (1) the jury's general verdict did not include a particularized expression of unanimity as to the means by which he committed the crime and (2) the evidence was not sufficient to establish

that he induced a witness to either testify falsely or to unlawfully withhold testimony.

¶7 Criminal defendants in Washington have a right to a unanimous jury verdict. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); WASH. CONST. art. I, § 21. In certain situations, the right to a unanimous jury verdict also includes the right to express unanimity on the means by which it finds the defendant to have committed the crime. *Ortega-Martinez*, 124 Wn.2d at 707.

¶8 The threshold test governing whether unanimity is required on an underlying means of committing a crime is whether sufficient evidence exists to support each of the alternative means presented to the jury. *Ortega-Martinez*, 124 Wn.2d at 707. If the evidence is sufficient to support each of these alternative means, a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary to affirm a conviction; the court may infer that the jury rested its decision on a unanimous finding as to the means. *Ortega-Martinez*, 124 Wn.2d at 707-08.

¶9 If one or more of the alternative means is not supported by substantial evidence, the verdict will stand only if we can determine that the verdict was based on only one of the alternative means and that substantial evidence supported that alternative means. *State v. Rivas*, 97 Wn. App. 349, 351-52, 984 P.2d 432 (1999), *overruled on other grounds by State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007) (conviction affirmed where there was no danger that the verdict rested on unsupported alternative means because evidence was presented as to only one means, even though the jury instruction included three alternative means of assault); *State v. Allen*, 127 Wn. App. 125, 132-35, 110 P.3d 849 (2005) (conviction overturned where the court could not be certain that the jury relied solely on one means because evidence regarding two alternatives was presented); *State v. Johnson*, 132 Wn. App. 400, 410, 132 P.3d 737 (2006) (burglary conviction upheld where the reviewing court could tell that the verdict was based on only one means which was

supported by substantial evidence). Evidence is sufficient to support conviction if, after viewing the evidence in a light most favorable to the State, a reasonable fact finder could find the essential elements of the crime beyond a reasonable doubt. *See State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

¶10 Here, the State presented substantial evidence *only* that Fleming tried to induce Ward to absent himself from the proceedings. The only evidence indicating a different means of tampering was the conversation where Evans asked Ward to change his story, but that conversation illustrates only Evans' crime, not Fleming's. Fleming himself concedes that there was not sufficient evidence to establish that Fleming sought to induce a witness to testify falsely or unlawfully withhold testimony. We can determine, from the record before us, that the verdict was based on only one of the alternative means—inducing the witness to "disappear"—and that substantial evidence supports that alternative. We therefore hold that Fleming was not denied his right to jury unanimity.

II. Offender Score

A. Sufficient Evidence To Establish Criminal History

¶11 Fleming argues that the trial court incorrectly determined his offender score because it based its calculation on insufficient evidence of Fleming's criminal history. This argument is not persuasive. In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. RCW 9.94A.530(2). " 'Acknowledged' facts include all those facts presented or considered during sentencing that are not objected to by the parties." *State v. Grayson*, 154 Wn.2d 333, 339, 111 P.3d 1183 (2005). Fleming did not object to the prosecutor's recitation of criminal history at the sentencing hearing. Thus, the trial court's reliance on that recitation was proper.

## B. Same Criminal Conduct Irrelevant

¶12 Fleming also argues that the trial court miscalculated his offender score by neglecting to determine on the record whether his prior convictions constituted the same criminal conduct under RCW 9.94A.525. This argument is not persuasive either. A trial court may determine that nine convictions exist and then stop calculating, so long as the court is not considering the imposition of an exceptional sentence based on reasons related to the offender score. *State v. Lillard*, 122 Wn. App. 422, 433, 93 P.3d 969 (2004), *review denied*, 154 Wn.2d 1002, 113 P.3d 482 (2005). Where the standard sentence range is the same regardless of a recalculation of the offender score, any calculation error is harmless. *See State v. Argo*, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996). The 2002 sentencing court calculated Fleming's offender score as 14, based on the circumstances surrounding his eight prior convictions. Additionally, the 2002 court convicted Fleming of three more crimes. The trial court here *could* have determined that those three 2002 convictions constituted same criminal conduct, but regardless of that calculation, Fleming's offender score would be more than 9. Here, the standard sentence range is the same whether Fleming's offender score is 9 or 11. Thus, the trial court's failure to specifically address same criminal conduct was harmless.

¶13 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG, J., concurs.

QUINN-BRINTNALL, J., concurs in the result.

Review denied at 163 Wn.2d 1047 (2008).