**FILED**
**MARCH 10, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37584-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LARRY LYNN WINTERS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Larry Lynn Winters appeals his sentence for first degree assault, arguing the trial court failed to recognize its discretion to award an exceptional sentence downward and committed legal error in imposing legal financial obligations (LFOs). We disagree with Mr. Winters's former argument, but grant him relief as to the LFOs.

## FACTS

Mr. Winters entered an *Alford*[1] plea to assaulting his wife with a deadly weapon. The allegation was that Mr. Winters pointed a gun at his wife's face after a verbal dispute. When his wife grabbed the gun to move it away, Mr. Winters fired the gun and shot his wife through the thumb. Mr. Winters then unsuccessfully attempted to shoot his

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

wife in the face before she escaped their home. Mr. Winters had consumed a large amount of alcohol prior to the shooting and claimed to have very little memory of the incident.

Mr. Winters sought an exceptional sentence downward based on a combination of mitigating circumstances including his age, poor health, lack of criminal history, voluntary victim compensation, and own experience as a victim of domestic violence. In summary, Mr. Winters was 69 years old at the time of his offense conduct and suffering from rectal cancer. Mr. Winters also carried several mental health diagnoses, which he said were exacerbated by alcohol and emotional abuse from his wife. According to a psychologist who testified at the sentencing hearing, the emotional abuse allegedly inflicted on Mr. Winters by his wife had the same potential for devastation as would physical abuse. The psychologist recommended Mr. Winters receive a therapeutic sentence in lieu of prison.

The trial court declined to impose a sentence below the standard range, explaining that a downward departure must be based on circumstances "sufficiently substantial and compelling to distinguish this crime in question from others." Report of Proceeding (RP) (May 14, 2020) at 295. According to the court, the disharmony between Mr. Winters and his wife did "not reach that standard." *Id*. at 296. The court noted that the conflict

between Mr. Winters and his wife was similar to what is commonly presented in divorce cases.

In discussing its sentencing decision, the trial court expressed sympathy toward Mr. Winters's age and health. However, the court explained these factors were beyond its consideration:

> You know, there is something here that I can't consider, and I kind of wish I could in some cases, and this might be one, is you take a look at a person's age and their medical condition, I think the legislature should look at this. But I can't make them do that. I mean do the people really want someone in Mr. Winters'[s] medical condition at his age in the prison system for ten years and helping take care of him, is that really what we want to do too?
> I've often thought that there should be some consideration, just like there is for very young people, we're seeing that more and more with youth, special considerations that, you know, certain people might get at a certain age with their limitations on mobility and the like, that they might be less likely. But that's not a door that's open to me.

*Id*. at 297-98.

Based on an offender score of zero, Mr. Winters's standard sentencing range was 93 to 123 months, followed by a 60-month sentencing enhancement. The court imposed a low-end sentence followed by three years' community custody. The court also ordered mandatory LFOs including a $500 crime victim penalty assessment and a $100 DNA (deoxyribonucleic acid) collection fee.

Mr. Winters timely appeals his sentence.

3

No. 37584-6-III
*State v. Winters*


ANALYSIS

*Mitigated exceptional sentence*

Appeals of standard range sentences are generally prohibited. RCW 9.94A.585(1). When a defendant challenges the denial of an exceptional sentence downward, appellate review turns on proof of legal error, such as a categorical refusal to exercise discretion or the mistaken belief of a lack of discretion to impose a nonguideline sentence. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017); *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).

We discern no legal error in the trial court's denial of Mr. Winters's departure request. Contrary to Mr. Winters's assertions on appeal, the court did not rule that it was prohibited from departing because the abuse alleged by Mr. Winters was emotional rather than physical. Instead, the court's decision was based on the fact that Mr. Winters had not shown an exceptional level of emotional abuse when compared to other cases that come before the court. This was an appropriate basis for denying the departure. *See State v. Law*, 154 Wn.2d 85, 97-98, 110 P.3d 717 (2005).

The trial court's lament that it lacked discretion to depart downward based on Mr. Winters's age was not legal error. We agree with Mr. Winters that age can sometimes be a mitigating factor at sentencing. *See State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359

4

(2015). But to justify a below-guideline sentence, the defendant's age must have some bearing on their offense conduct. *Id*. at 689. Here, there was no evidence Mr. Winters's age impacted his crime. Thus, there was no basis to depart.

As pointed out by the trial court at sentencing, public policy would seem to support an alternative to incarceration for an individual, such as Mr. Winters, who is aged and in need of significant medical care. Indeed, this policy plays a role in the State's compassionate release program. RCW 9.94A.728(1)(d). But this type of policy concern is not relevant to the question of a mitigated sentencing decision under the Sentencing Reform Act of 1981, chapter 9.94A RCW. *Law*, 154 Wn.2d at 101. The trial court appropriately recognized it lacked discretion to depart based on Mr. Winters's age and health issues.

*LFOs*

Mr. Winters makes two objections to the LFOs assessed in his judgment and sentence. First, he complains the trial court erroneously imposed discretionary community custody supervision fees. Second, he argues his mandatory LFOs cannot be satisfied through attaching his social security benefits. The State essentially concedes the substance of both arguments.

A trial court's authority to impose community custody supervision fees is set by RCW 9.94A.703(2)(d). This statute provides that "[u]nless waived by the court, as part of a term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." Given that supervision fees are waivable, they are discretionary. However, they are not a "'cost'" under RCW 10.01.160(3) that "'shall not'" be imposed against an indigent defendant. *See State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020).

Here, the trial court's sentencing disposition reflected an intent to waive all discretionary LFOs based on Mr. Winters's indigence. The imposition of supervision fees appears to have been inadvertent. The language imposing the fees is contained in a lengthy paragraph of the prewritten judgment and sentence form. As the parties agree, the supervision fees should be struck on remand.

Mr. Winters also contends the trial court erred by failing to specify his mandatory LFOs (the $500 crime victim penalty assessment and $100 DNA fee) cannot be satisfied from his social security benefits. The State concedes it cannot collect social security benefits for payment of LFOs. *See* 42 U.S.C. § 407(a). Nevertheless, it argues remand is unnecessary because the law on this point is clear and the State has not attempted to collect LFOs from Mr. Winters's benefits.

We have no reason to disagree with the State's claim that it has not attempted to collect LFOs from Mr. Winters's social security benefits. Nevertheless, because this matter is being remanded for correction of the judgment and sentence as to supervision fees, we direct that the trial court also specify in the judgment and sentence that payment of LFOs cannot be enforced against social security funds per 42 U.S.C. § 407(a).

## CONCLUSION

Mr. Winters's sentence is affirmed. We remand to strike community custody supervision fees and to clarify that the mandatory LFOs (the $500 crime victim penalty assessment and $100 DNA collection fee) may not be satisfied from Mr. Winters's social security benefits.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Siddoway, C.J.                                              Staab, J.

7