[No. 74913-2.    En Banc.]
Argued October 26, 2004.    Decided May 26, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. JOHN W. GRAYSON, *Petitioner*.

334

*Jason B. Saunders* (of *Washington Appellate Project*), for petitioner.

*David S. McEachran, Prosecuting Attorney,* and *Kimberly A. Thulin, Craig D. Chambers,* and *Hilary A. Thomas, Deputies,* and *Melinda B. Miller,* for respondent.

¶1 CHAMBERS, J. — We are asked to determine whether John Grayson received sufficient consideration of his request for a drug offender sentencing alternative (DOSA) as part of his sentence for delivery of crack cocaine. Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, whether to give a DOSA is a decision left to the discretion of the trial judge, and our review of that exercise of discretion is limited. However, while the SRA vests broad discretion in the hands of the trial judge, the trial judge must still exercise this discretion in conformity with the law.

¶2 In this case, the trial judge failed to exercise any meaningful discretion in deciding whether a DOSA sen-

tence was appropriate for this defendant. While we cannot say that denying Grayson a DOSA was an abuse of discretion, we agree with Grayson that his request was entitled to actual consideration and, based at least on the record before us, it appears to have been categorically denied. Accordingly, we remand for a new sentencing hearing.

## FACTS

¶3    In July 2000, an undercover Drug Enforcement Administration agent caught Grayson delivering 1.2 grams of cocaine to a confidential informant. Grayson subsequently pleaded guilty to one count of delivering cocaine in violation of former RCW 69.50.401(a)(1) (1998). He also separately pleaded guilty to one count of possession of marijuana with intent to deliver.

¶4 Prior to sentencing, Grayson requested a DOSA. While the DOSA report is not in the record, the parties appear to agree that he was screened and found eligible. However, at sentencing, the prosecuting attorney argued that Grayson was not a good candidate for a DOSA because he was a career drug criminal with a long history of drug crimes and with additional pending charges. The record supports the prosecutor's argument. Grayson's extensive criminal history includes separate counts of possession with intent to deliver in 1992, 1994, 1999, and 2002, as well as several separate counts of possession in 1998 and 1999. When arrested on the charges currently before us, Grayson was on conditional release after being charged with delivering seven pounds of marijuana, worth about $12,000. Also while on release, Grayson committed several other violations of his conditions of release, including possession of an ounce of crack cocaine. Grayson had an offender score of 10, based on an extensive criminal history (or an offender score of 13 including pending charges). Grayson's standard range sentence on the current charge was 108 to 144 months.

¶5    After reviewing this history and Grayson's eligibility screening, the trial judge denied the motion for a DOSA.

The judge did not dwell on the facts of Grayson's case in his oral ruling. Instead, he stated simply:

The motion for a DOSA . . . is going to be denied. *And my main reason for denying [the DOSA] is because of the fact that the State no longer has money available to treat people who go through a DOSA program.*

So I think in this case if I granted him a DOSA it would be merely to the effect of it cutting his sentence in half. I'm unwilling to do that for this purpose alone. There's no money available. He's not going to get any treatment; it's denied.

Report of Proceedings (RP) at 152-53 (emphasis added). Likely aware of the potential issue currently on review, the prosecutor interjected:

If I could ask for the record and for your consideration there's other important factors that could also serve to undercut the fact of the DOSA. No. 1, Mr. Holleman would testify—

THE COURT: I'm not going to give a DOSA, so that's it.

RP at 152-53. The trial judge then gave Grayson a standard range sentence of 138 months. During sentencing, Grayson did not protest the trial court's conclusion that the DOSA program lacked funds or request an evidentiary hearing. On review, he challenged for the first time the trial court's alleged failure to exercise discretion and reliance on a belief the DOSA program was underfunded. The Court of Appeals affirmed the sentence, and we granted review. *State v. Grayson*, noted at 152 Wn.2d 1011, 99 P.3d 896 (2004).

## ANALYSIS

¶6 The DOSA program is an attempt to provide treatment for some offenders judged likely to benefit from it. It authorizes trial judges to give eligible nonviolent drug offenders a reduced sentence, treatment, and increased supervision in an attempt to help them recover from their addictions. *See* RCW 9.94A.660. Under a DOSA sentence, the defendant serves only about one-half of a standard range sentence in prison and receives substance abuse

treatment while incarcerated. Afterward, he or she is released into closely monitored community supervision and treatment for the balance of the sentence. RCW 9.94A-.660(2). The offender has significant incentive to comply with the conditions of a DOSA, since failure may result in serving the remainder of the sentence in prison. RCW 9.94A.660(2).

■ ¶7 As a general rule, the trial judge's decision whether to grant a DOSA is not reviewable. RCW 9.94A.585(1); *State v. Bramme*, 115 Wn. App. 844, 850, 64 P.3d 60 (2003). However, an offender may always challenge the procedure by which a sentence was imposed. *State v. Herzog*, 112 Wn.2d 419, 423, 771 P.2d 739 (1989) (quoting *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796 (1986)). Primarily, Grayson claims that the trial court failed to exercise the discretion vested by statute by categorically refusing to seriously consider whether a DOSA sentence was appropriate.[1] While he does not squarely raise the issue, he alludes to the trial court's reliance on facts outside of the record in rendering his decision. We will turn briefly to that issue first.

## What Facts May a Judge Consider At Sentencing?

■ ¶8 It is clear that the trial court relied on extrajudicial information at the sentencing hearing. Constitutional and statutory procedures protect defendants from being sentenced on the basis of untested facts. *See generally Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); RCW 9.94A.530(2). Under the

---

[1] Grayson also raises two additional arguments. First he argues that the trial judge's decision violates separation of powers because the trial judge effectively made a sentencing policy decision. We decline to reach this argument since it was raised for the first time in a supplemental brief, and the State did not have a sufficient chance to respond to it. Second, Grayson argues that a 2003 SRA amendment should be applied retroactively to the calculation of his sentence. The amendment reduced the offender score for adult drug crimes from three points to one point and would have significantly lowered Grayson's offender score. Because Grayson substantially (and properly) concedes in his supplemental brief that his challenge is foreclosed by *State v. Ross*, 152 Wn.2d 220, 95 P.3d 1225 (2004), we also decline to reach this issue.

SRA, a trial judge may rely on facts that are admitted, proved, or acknowledged to determine "any sentence," including whether to sentence a defendant to a DOSA. RCW 9.94A.530(2). "Acknowledged" facts include all those facts presented or considered during sentencing that are not objected to by the parties. *See State v. Handley*, 115 Wn.2d 275, 282-83, 796 P.2d 1266 (1990).

¶9 Under the SRA, where a defendant raises a timely and specific objection to sentencing facts, the court must either not consider the fact or hold an evidentiary hearing. RCW 9.94A.530(2) (requiring defendant to object); *see also State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). Grayson did not object to the trial judge's statement concerning DOSA funding. If he had, then he might have been entitled to a hearing.[2]

¶10 We note that the SRA does not require our judges to make decisions in a factual vacuum. Our constitutional democracy is dependent upon an independent and informed judiciary. Our judiciary benefits from and relies upon judges who have studied and become learned in the law and whose personal experiences have taught them a practical understanding of the world we live in and how people live, work, and interact with the world around them.

¶11 We do not believe the legislature intended that judges leave their knowledge and understanding of the world behind and enter the courtroom with blank minds. Judges are not expected to leave their common sense behind. Nor do we believe the legislature expected judges to hold hearings on whether fire is hot or water is wet. We prize judges for their knowledge, most of which is obtained outside of the courtroom. Within the statutory and constitutional guidelines, judges may exercise their discretion to give a fair and just sentence.

---

[2] Since the question before us is whether Grayson is entitled to a different type of sentence, rather than a sentence greater than the standard range, this case gives us no occasion to consider the potential impact of *Blakely* on the proper procedures used at sentencing. *Cf. Blakely*, 542 U.S. at 301-04.

■ ¶12 These statutory guidelines do not require judges to hold hearings on the laws of the universe, but only on adjudicative facts. "Adjudicative facts are usually those facts that are in issue in a particular case." *Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N.D. Cal. 1984). In a criminal case, adjudicative facts generally relate to the facts of the crime and the defendant, but could also include social science and other research that directly affects the litigants before the court and are properly placed in contest by the parties.

¶13 But "[l]egislative facts are 'established truths, facts or pronouncements that do not change from case to case but [are applied] universally, while adjudicative facts are those developed in a particular case.' . . . [H]istorical facts, commercial practices and social standards are frequently noticed in the form of legislative facts." *Korematsu*, 584 F. Supp. at 1414 (second alteration in original) (quoting *United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976)); *see* John Monahan & Laurens Walker, *Social Authority: Obtaining, Evaluating, and Establishing Social Science in Law*, 134 U. Pa. L. Rev. 477, 482-84 (1986). A trial judge may properly take judicial notice of such facts. *See* ER 201.

■ ¶14 The purpose of RCW 9.94A.530(2) is to prevent ex parte contact with the judge, sua sponte investigation and research by a judge, and sentencing based on speculative facts. Underlying this statutory procedure is the principle of due process. The court should consider only adjudicative evidence that the parties in an adversarial context have "the opportunity to scrutinize, test, contradict, discredit, and correct." George D. Marlow, *From Black Robes to White Lab Coats: The Ethical Implications of a Judge's Sua Sponte, Ex Parte Acquisition of Social and Other Scientific Evidence During the Decision-Making Process*, 72 St. John's L. Rev. 291, 319 (1998) (citing *E.I. du Pont de Nemours & Co. v. Collins*, 432 U.S. 46, 57, 97 S. Ct. 2229, 53 L. Ed. 2d 100 (1977)); *see also* David Boerner, Sentencing in Washington: A Legal Analysis of the Sentencing Reform Act of 1981 § 6.25 (1985) (discussing when a trial judge abuses discretion under the SRA by relying on improper information).

■ ¶15 General information about a sentencing alternative such as how, why, and for whom the program is designed is properly classified as legislative. It is the kind of information that helps a judge decide questions of law and policy and exercise discretion. Generally, a trial court may rely on this kind of information without holding a sentencing hearing. However, a specific fact about a sentencing alternative program, the truth or falsity of which may determine whether a defendant will receive the alternative sentence, may be adjudicative. When a judge determines that a program such as DOSA is unavailable to a defendant because the program is underfunded, the fact may become adjudicative if the truth or falsity affects the party before the court. Under such circumstances, a litigant may be entitled to a hearing on the issue.

¶16 The SRA also provides for the proper treatment of disputed adjudicative facts: "Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point." RCW 9.94A.530(2). Here Grayson failed to request a hearing on the issue of whether or not there was adequate funding for DOSA. We recognize that Grayson did not have much time to formulate an objection. There may be a case where the failure to immediately object might not be fatal to a challenge to the sentence. This may be such a case because when the prosecutor suggested enriching the record with specific reasons that Grayson was not a suitable candidate for a DOSA, the judge vigorously interrupted midsentence with the statement, "I'm not going to give a DOSA, so that's it." RP at 153. Under these circumstances, a party may be relieved of the duty to object. But since we resolve this case on other grounds, we need not decide whether this would be such a case. The best practice is to promptly object. *See Mail*, 121 Wn.2d at 712.

CATEGORICAL DECISIONS AND SENTENCE ALTERNATIVES

■■ ¶17 Next, we consider whether, as Grayson contends, the trial judge abused his discretion by categorically

refusing to consider a DOSA sentence. Again, while trial judges have considerable discretion under the SRA, they are still required to act within its strictures and principles of due process of law. *Mail*, 121 Wn.2d at 712. While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). A trial court abuses discretion when "it refuses categorically to impose an exceptional sentence below the standard range under any circumstances." *Id.* at 330. The failure to consider an exceptional sentence is reversible error. *Id.* Similarly, where a defendant has requested a sentencing alternative authorized by statute, the categorical refusal to consider the sentence, or the refusal to consider it for a class of offenders, is effectively a failure to exercise discretion and is subject to reversal. *Cf. Garcia-Martinez*, 88 Wn. App. at 330.

¶18 Although the trial judge declined to give a DOSA "mainly" because he believed there was inadequate funding to support the program, we recognize that the judge did not state that this was his "sole" reason. But he did not articulate any other reasons for denying the DOSA, and he specifically rejected the prosecution's suggestion that more reasons be placed on the record. Further, it is clear that the judge's belief that the DOSA program was underfunded was the primary reason the DOSA was denied. Considering all of the circumstances, the trial court categorically refused to consider a statutorily authorized sentencing alternative, and that is reversible error.

¶19 We recognize that there were ample other grounds to find that Grayson was not a good candidate for DOSA. Grayson was facing significant time (108 to 144 months) for this crime and still was scheduled to face at least another 100 months for a pending marijuana delivery charge—a charge involving a quantity of drugs so substantial as to

make him ineligible for DOSA. Grayson had an extensive and exclusively drug-based criminal history. He continued to commit drug offenses even while on conditional release from other drug offenses. While we reverse the sentence on procedural grounds, we leave it in the able hands of the trial judge on remand to consider whether Grayson is a suitable candidate.

## CONCLUSION

¶20 We reverse on the limited grounds that the trial judge did not appear to meaningfully consider whether a sentencing alternative was appropriate. But we do not fault the judge at all for having background knowledge about DOSA. If judges are to consider meaningful alternatives to prison sentences, they should be knowledgeable about the programs, their effectiveness, and whether the offender is a good candidate for the program. Again, the purpose of DOSA is to provide meaningful treatment and rehabilitation incentives for those convicted of drug crimes, when the trial judge concludes it would be in the best interests of the individual and the community. *See* RCW 9.94A.660. But trial judges do not rule in a vacuum, and we do not require trial courts to ignore funding realities. *Cf. Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 389, 932 P.2d 139 (1997) (court will not order expenditures to meet statutory requirements legislature has chosen not to fund).

¶21 Accordingly, we vacate Grayson's sentence and remand for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, and SANDERS, JJ., concur.

¶22 BRIDGE, J. (dissenting) —The majority purports to climb into the mind of the trial judge and then castigate him for thoughts and intentions he is perceived to have had. The record cannot sustain this mind-reading exercise, nor does our deference to the trial court's discretion warrant it. Succinctly put, I believe that the trial court properly

exercised its discretion when it concluded that John Grayson and the community would not benefit from a drug offender sentencing alternative (DOSA), and I would affirm the Court of Appeals decision in this case.

¶23 The majority concludes that the trial court erred by categorically refusing to consider a DOSA. Majority at 342. But in ordering a DOSA eligibility screening for Grayson, the trial judge clearly indicated that he not only did not refuse to consider the alternative sentence but was willing to consider such an alternative if appropriate in the circumstances. Clerk's Papers (CP) at 15. More importantly, while systemic funding problems were the reason why the trial judge denied the DOSA in this case, they were not the *sole* reason. Verbatim Report of Proceedings (RP) at 152. The trial judge did not assert that he would deny DOSA in *every* case, but instead spoke to the specific impact of the program's ineffectiveness on *this* case. RP at 152 ("[I]n this case if I granted [Grayson] a DOSA it would be merely to the effect of it cutting his sentence in half."). Therefore, I cannot agree with the majority's conclusion that the trial judge categorically refused to exercise his discretion.

¶24 Moreover, it is clear that the trial judge acted within his discretion in denying the DOSA here. Once a defendant has been deemed eligible for DOSA, as Grayson was, the court must consider whether "the offender and the community will benefit from the use of the [sentencing] alternative." RCW 9.94A.660(2). The trial judge's evaluation of the practical effect of granting a DOSA in this case was relevant to the specific question presented by the DOSA statute. And nothing in the DOSA statute prevents the trial judge from taking the program's effectiveness into account. *See* RCW 9.94A.660; *see also State v. Mail*, 121 Wn.2d 707, 711, 854 P.2d 1042 (1993). The trial judge was also aware that Grayson had a significant history of drug convictions, which included several counts of possession and possession with intent to deliver in 1992, 1994, 1998, 1999, and 2002. CP at 6. Most significantly, the trial judge was aware of other pending drug charges, one of which involved such a large

quantity of marijuana that Grayson could not qualify for DOSA in that case. RP at 153-54 (charged with delivering seven pounds of marijuana, worth about $12,000). In addition, Grayson committed several other violations of his conditions of release, *id.*, and, based on his criminal history and concurrent charges, his offender score in this case was 13. CP at 6.

¶25 The record does not sustain the majority's conclusion that the trial judge categorically refused to exercise his discretion. Instead the trial judge clearly answered the question posed by the DOSA statute: Would Grayson and the community benefit if the court were to grant him a DOSA sentence? The trial judge acted within his discretion when he concluded that the answer to this question was "no."

¶26 I dissent.

OWENS and FAIRHURST, JJ., and IRELAND, J. Pro Tem., concur with BRIDGE, J.